CRUM v. MONTGOMERY–DOTTER ICE CO.   (No. 81/65.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

ACCORD AND SATISFACTION &⇒11—PAYMENT BY CHECK—RECEIPT IN FULL— RECEIPT AND USE OF PROCEEDS.

 Where plaintiff contracted to remove ice from defendant's icehouse, and on May 4th was discharged, and thereafter rendered four separate accounts, in none of which he made any claim on account of his discharge, and accepted defendant's check on which was written "settlement in full" and receipted the last bill, and, when he noticed the words "settlement in full," added the words "to May 4th," and cashed it and used the proceeds, he had no cause of action for profits lost by his discharge surviving such use of the check.

 [Ed. Note.—For other cases, see Accord and Satisfaction, Cent. Dig. §§ 75–82; Dec. Dig. &⇒11.]

Appeal from Trial Term, Albany County.

 Action by John Crum against the Montgomery-Dotter Ice Company. From an order setting aside a verdict in favor of the plaintiff and granting a new trial, plaintiff appeals.   Affirmed.

 Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

 B. W. Stryker, of Castleton, for appellant.

 Henry S. Kahn, of Cohoes (Rollin B. Sanford, of Albany, of counsel), for respondent.

 JOHN M. KELLOGG, J.   The plaintiff entered into a contract with the defendant to remove the ice from its icehouses at 17 cents a ton, and while he was performing the contract, May 4, 1912, the defendant required him to discontinue the work.   The action is brought to recover the prospective profits which the plaintiff might have earned if the contract had been performed by him.   The jury found for the plaintiff $1,500 damages, and the court set the verdict aside and ordered a new trial upon the ground that it was against the weight of evidence, holding in substance that a full settlement had been made between the parties.   The defendant contended that the contract was conditional that the plaintiff would not get drunk during the continuance of the work.   Plaintiff denies that any such condition was in the contract.

 About April 21st the defendant notified the plaintiff that he had been drunk and that the contract was terminated.   The plaintiff pleaded to be permitted to continue the contract, promising that he would drink no more, and the defendant permitted him to continue.   Upon May 4th the defendant notified the plaintiff to discontinue the work.   The plaintiff's only reply was that he was ready to continue the contract.   There is no substantial denial of the allegation that the plaintiff was discharged in April for drunkenness and was reinstated upon the agreement to keep sober.   After the discharge the defendant purchased certain ice tools of the plaintiff, and requested him to render an account so they could settle up.   The plaintiff rendered four separate accounts in none of which did he make any claim on account of his discharge.

May 6th plaintiff wrote defendant a letter stating the total amount of ice removed, the payments made, and showing a balance due therefor of $71.36. He then refers to a boat which was employed by him, saying that he had paid Baldwin for April on account of it $91.50, which was very expensive, and that he is not inclined to pay for more than four days in May at $2.50 a day; that the breaking down of the boat has caused him great trouble. He then speaks of certain ice tools which he had bought and paid for, costing $56; and that there is $6 worth of rope, five ice hooks worth $4.85, two summer bars at $10, pulley blocks, etc., for buoys on the boat 60 cents, making a total of $21.35, and adds: "With these present goods this leaves a balance due me of $149.21." He then again refers to Baldwin's bill, says that the extra oil and goods in his bill are now on the boat; also, 20 gallons of gasoline paid for, "together with Saturday's work of March 29th, which totals $32, where I held the men at icehouse under your instructions waiting for a boat which did not arrive, leaving a total which is due me added together, with the foregoing account, of $181.21. Baldwin has also charged me for meeting Dotter at Coeyman's $2.50, also $1.50 extra for running to the Clifford icehouse to measure ice, which should be added to the foregoing amount, leaving a total to me of $185.21." He then says:

"Now Fred I am in consultation with Mr. Solomon Co. and any good word that you might say would be highly appreciated for future recognition."

He then speaks of some other ice tools, and continues:

"As these goods have been used we will figure them in at $25.00 for entire lot now, making a balance due me less goods which I have left for accommodation a total of $210.21."

On May 9th he renders another bill embracing substantially the same items, discounting the ice tools 15 per cent., with a balance of $179.79. On May 11th, at defendant's request, he incloses an itemized bill for the same amount. On May 14th he wrote that he had adjusted the differences with Baldwin and sends the adjustment between him and Baldwin, showing $36.46 due Baldwin. He says in the letter:

"When I left the yacht last Saturday the cans were filled with oil and gasoline tank was nearly filled which I had paid for. Now this bill of Baldwin's— I want to be fair. But will not pay for putting boat in running order nor for oil and gasoline his men have used on her. I paid his man all through the high water making a total of $91.50 for month of April and claim that the extra oil bill he presents is not for me to pay."

On May 17th the defendant's president met the plaintiff, saying he wanted to make a fair settlement with him, and gave him a check for $36.48, the amount shown due Baldwin from the plaintiff according to their settlement, and gave the plaintiff a check for $173.03 upon which was written the words, "Settlement in full," delivered it to the plaintiff, and he receipted the fourth bill, which was substantially like the other bills but with more details. It has been lost, but there is no dispute about its contents. The plaintiff took the check to the bank that day and for the first time, as he says, noticed the words, "Settlement in full." He then added, without the defendant's knowledge, the words

·'to May 4th"; that being the date when he was discharged. The check was cashed by the plaintiff and the money used by him. From the time that the defendant told the plaintiff not to continue the work and he replied he was ready to go on, no claim was ever made by plaintiff for any damages or for any other matter outside of the accounts rendered except by the complaint served.

Whatever was due to the plaintiff was upon the contract for removing the ice and for the ice tools purchased and for the miscellaneous items which the plaintiff thought the defendant ought to pay on account of the contract and for which the defendant was willing to pay him. If the plaintiff claimed any other sum due him growing out of the contract itself, it was his duty to make the claim. It is clear the defendant from the accounts rendered believed, and was induced by the plaintiff to believe, that the settlement was in full of all matters growing out of the ice contract. And evidently the plaintiff so understood it. The plaintiff could not use the check or change its reading without the defendant's consent and then claim it was not a settlement in full. Wisner v. Schopp, 34 App. Div. 199, 54 N. Y. Supp. 543; Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695; Fuller v. Kemp, 138 N. Y. 231, 33 N. E. 1034, 20 L. R. A. 785.

The plaintiff therefore had no cause of action surviving after he used the check with knowledge of its contents. The verdict therefore was against the law and clearly against the evidence. The order setting it aside and granting a new trial is therefore affirmed, with costs to respondent. All concur.

